UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EDDIE L. MILLER

                              Plaintiff,                    00 Civ. 140 (PKC)

              -against-

                                                           MEMORANDUM
                                                           AND ORDER

NEW YORK CITY HEALTH & HOSPITAL
CORP. and KING'S COUNTY HOSPITAL
                              Defendants.
------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

              In a Memorandum and Order dated August 11, 2004, I granted the

defendants' motion for summary judgment dismissing the plaintiff's claims pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  Miller v. New York City

Health & Hosp. Corp., 2004 WL 1907310 (S.D.N.Y. Aug. 25, 2004).[1]  The defendants'

motion was fashioned as one seeking dismissal of all claims in this action, but I noted

that, generously construed, the complaints filed by the plaintiff, who is proceeding pro se,

raised allegations that were not addressed in the defendants' motion papers.  These

included claims made pursuant to 42 U.S.C. § 1981, and allegations implicating

defendants' adherence to their internal policies and procedures.  Id. at *15.  Because the

record was unclear as to whether the pro se plaintiff continued to assert claims brought in

complaints that arguably had been superseded, I directed him to submit an affirmation

stating whether he wished to pursue these claims, and that if he did, he should submit a

narrative explaining the bases of these claims.  Id.  I further stated that if, after reviewing

---

[1] Although the online citation for the Memorandum and Order bears the date of August 25, 2004, it was
signed and filed on August 11, 2004.

1

the plaintiff's submissions, the defendants believed there was a good-faith basis to file a subsequent motion for summary judgment, they could do so. Id.

Plaintiff filed an affirmation shortly thereafter. The defendants then filed this motion for summary judgment, which seeks the dismissal of the plaintiff's remaining claims.

Familiarity is assumed with the facts and procedural history of this case, as set forth in my prior Memorandum and Order. See Miller, 2004 WL 1907310 at *1-2. Briefly summarized, plaintiff Eddie Miller filed four amended complaints alleging discrimination and retaliation during the course of his employment with the defendants. He asserts that he was discriminated against because he was not white and because he was not foreign born. At his deposition, Mr. Miller testified that his only direct evidence of discrimination was the utterance of a racial epithet by one of his subordinates, who was black and of Guyanese descent. Id. at *1. He asserts that internal complaints of discrimination were inadequately investigated, and that he was erroneously accused of calling a supervisor a "Grand Wizard." Id. In the Memorandum and Order of August 11, 2004, I ruled that some of the plaintiff's claims were time-barred, that he failed to come forth with evidence of an adverse employment action in support of his employment discrimination claim, and that he failed to come forth with evidence in support of his retaliation claims. Id. at *3-13.

The plaintiff's affidavit of August 21, 2004 reasserted four bases for claims, each of which were implicated in his prior complaints. He asserts that the defendants violated his due process rights by not complying with Operating Procedure 20-10 ("O.P. 20-10") and Operating Procedure 20-40 ("O.P. 20-40"), internal guidelines

that govern employee treatment in a disciplinary action.  (Miller Aff. at 1-3)  He contends

that he is owed overtime pay and bereavement pay, and that the defendants' failure to pay

him was discriminatory.  (Miller Aff. at 3-5)  Lastly, he asserts that although he was

entitled to overtime pay, a supervisor forged time records to indicate that he was entitled

to "comp time" rather than overtime pay.[2]  (Miller Aff. at 5-6)

For the reasons explained below, the defendants' motion is granted, and

all of the plaintiff's remaining claims are dismissed.

### Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  It

is the initial burden of a movant on a summary judgment motion to come forward with

evidence on each material element of his claim or defense, demonstrating that he or she is

entitled to relief.  A fact is material if it "might affect the outcome of the suit under the

governing law . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The

evidence on each material element must be sufficient to entitle the movant to relief in its

favor as a matter of law.  Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d

241, 244 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts

to demonstrate that the non-moving party's claim cannot be sustained, the opposing party

---

[2] The distinction between "comp time" and overtime pay is not explicitly stated in the record before me.  In many contexts, however, "comp time" refers to compensatory time off from work in lieu of payment of wages.  See Fair Labor Standards Act, 29 U.S.C. § 207(o)(1) (defining "comp time" as applied to the employees of state public agencies).

must "set forth specific facts showing that there is a genuine issue for trial," and cannot

rest on "mere allegations or denials" of the facts asserted by the movant. Rule 56(e), Fed.

R. Civ. P.  In raising a triable issue of fact, the nonmovant carries only "a limited burden

of production," but nevertheless "must 'demonstrate more than some metaphysical doubt

as to the material facts,' and come forward with 'specific facts showing that there is a

genuine issue for trial.'" Powell v. Nat'l Bd. of Medical Examiners, 364 F.3d 79, 84 (2d

Cir. 2004) (quoting Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir.

1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. Caution is

particularly warranted when considering a summary judgment motion in a discrimination

action, since direct evidence of discriminatory intent is rare, and often must be inferred.

Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001). The Court must "view the

evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in its favor, and may grant summary judgment only when no reasonable trier

of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79

(2d Cir. 1995) (quotations and citations omitted); accord Matsushita Electric Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  In reviewing a motion for summary

judgment, the court must scrutinize the record, and grant or deny summary judgment as

the record warrants. See Fed. R. Civ. P. 56(c).  In the absence of any disputed material

fact, summary judgment is appropriate. Id.

The defendants have served the pro se plaintiff with the notice explaining

the manner in which a party may oppose summary judgment, as required by Local Rule

56.2. I am mindful of the latitude afforded to a pro se party opposing a summary judgment motion. See Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("special solicitude" owed to pro se litigants opposing summary judgment); Shabtai v. U.S. Dep't of Education, 2003 WL 21983025, at *5 (S.D.N.Y. Aug. 20, 2003) (obligation to construe leniently pro se opposition papers on a summary judgment motion). However, a party's pro se status does not vitiate the requirement that triable issues of fact must be raised in order to defeat a summary judgment motion. Miller, 2004 WL 1907310, at *9.

Discussion

1. Plaintiff's Section 1981 Claims Are Dismissed

"To establish a § 1981 claim, a plaintiff … must show: (1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendants; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981." Lauture v. Int'l Business Machines Corp., 216 F.3d 258, 261 (2d Cir. 2000). Section 1981 provides as follows: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

The Supreme Court has held that a plaintiff may not employ section 1981 to seek relief from a municipality that is broader than the relief available pursuant to section 1983. Jett v. Dallas Independent School District, 491 U.S. 701, 735-36 (1989). Therefore, to succeed in a section 1981 claim against a municipality, the plaintiff must

establish that the violation of constitutional rights was pursuant to a municipal policy or

practice, as delineated in Monell v. Department of Social Services of the City of New

York, 436 U.S. 658, 691 (1978). See Jett, 491 U.S. at 735-36; Patterson v. County of

Oneida, New York, 375 F.3d 206, 226 (2d Cir. 2004). This may be done by establishing

that constitutional rights have been violated pursuant to a "policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's officers" or

"pursuant to governmental 'custom' even though such a custom has not received formal

approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-

91. A municipality may not be held liable pursuant to a theory of respondeat superior.

Goldberg v. Town of Rocky Hill, 973 F.2d 70, 72 (2d Cir. 1992).

Defendants assert that the Complaint is devoid of facts that support a

Monell claim, and that the record does not contain evidence of a policy, custom or

practice establishing, supporting or condoning discrimination or retaliation. The

plaintiff's Third Amended Complaint asserted claims pursuant to section 1981, including

violations of OP 20-10 and denial of bereavement pay in contradiction to the defendants'

official bereavement policy. In his affirmation of August 21, 2004, the plaintiff sets forth

fact narratives and documentation pertaining to his Section 1981 claims. I now turn to

the record as set forth by Mr. Miller.

Mr. Miller asserts that OP 20-10 requires an employee facing disciplinary

action to be given counseling, followed by a warning, and ultimately suspension without

pay. (Miller Aff. at 1-2) The copy of Operating Procedure 20-10 proffered by the

plaintiff indicates that, "[e]xcept in cases of incompetence or misconduct of a more

serious nature," disciplinary action should only follow corrective efforts on the part of an

employee's supervisors. (attached at Miller Aff. Ex. B) Assuming arguendo that the

plaintiff was eligible for treatment under OP 20-10 and did not fall within the exceptions

contained therein, the plaintiff has come forth with no evidence indicating that he was

denied OP 20-10 process in a discriminatory manner, much less one that amounted to a

Monell-type violation. Plaintiff points to two colleagues of West Indian origin who

allegedly uttered disparaging remarks about him, but were not suspended without pay,

whereas plaintiff received a 60-day suspension for uttering alleged threats. (Miller Aff.

at 2) Plaintiff appears to argue that because these colleagues were not disciplined but he

was, the defendants subjected him to discrimination under section 1981. However, the

plaintiff directs the Court to nothing in the record that would permit a reasonable jury to

conclude that any failure to follow OP 20-10 was pursuant to a policy, practice or

custom, or otherwise meets the Monell standard. Because, in response to the defendants'

motion, the plaintiff has come forward with no evidence that he was denied any rights

under Section 1981 pursuant to a policy, practice or custom, his claim asserting non-

adherence to O.P. 20-10 is dismissed.

       Plaintiff next contends that he was unlawfully denied bereavement pay

during his absence from work in order to attend his mother's funeral in December 1997.

(Miller Aff. at 5) Mr. Miller contends that this denial of bereavement pay was

discriminatory and violated Section 1981, and attaches a pay stub from the relevant pay

period, which he asserts shows that bereavement pay was unlawfully withheld. However,

the plaintiff submits no evidence supporting an assertion that the denial of bereavement

pay either was discriminatory, or occurred pursuant to an unconstitutional policy, practice

or custom of the defendants. Because there is no evidence in the record before me that

7

the denial of bereavement pay constituted discriminatory conduct under Section 1981, or was the result of a policy or practice that unlawfully discriminated against him, the defendants' motion is granted, and this claim is dismissed.

Because, in response to defendants' motion, the plaintiff has come forward with no evidence that supports a claim that he was denied due process under O.P. 20-10 or bereavement pay pursuant to an unlawful policy, practice or custom, the defendants' motion for summary judgment is granted, and the plaintiff's section 1981 claims are dismissed.

> 2. Plaintiff's Claim That He Was Unlawfully Denied Overtime Pay is Dismissed

Plaintiff contends that the defendants denied him overtime pay as retaliation for commencing this litigation. The plaintiff's Fourth Amended Complaint, dated June 29, 2001, asserts that overtime pay was wrongfully denied to him, although it does not address the pay denial in the context of a Title VII retaliation claim. Even if plaintiff had asserted such a claim, based upon my review of the record set forth by the plaintiff in opposition to the defendants' summary judgment motion, I conclude that there are no triable issues of fact supporting a retaliation claim.

Because direct evidence of discrimination – a " 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent," Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) – is typically unavailable, plaintiffs and courts ordinarily proceed by way of the three-part burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The evidentiary burdens in a discrimination or retaliation case under Title VII are governed by the tripartite evidentiary scheme set forth in McDonnell Douglas, 411 U.S. at 802-04. The plaintiff

8

bears the initial burden of proving a prima facie case by showing that he or she: (1) is a member of a protected class; (2) was qualified for the position at issue; (3) suffered adverse employment action; and (4) that the circumstances of the adverse employment action gives rise to an inference of discrimination.  Mandell v. County of Suffolk, 316 F.3d 368, 377-78 (2d Cir. 2003); Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000).

Defendants assert that plaintiff's retaliation claim should be dismissed because he cannot set forth any evidence that he suffered an adverse employment action. In Sanders v. New York City Human Resources Admin., 361 F.3d 749, 755 (2d Cir. 2004), the court reiterated the established definition of "an adverse employment action as a 'materially adverse change' in the terms and conditions of employment."  "To be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  Id. (quoting Terry v. Ashcroft, 336 F.2d 128, 138 (2d Cir. 2003)).  Examples of material adverse change are "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  Id. (ellipsis in original).

The defendants have set forth evidence showing that the plaintiff was compensated several months later for overtime that he worked in January 2001.  A declaration submitted by Ernesto Rogers, the supervisor system analyst at King's County Hospital Center, states that when the payroll department realized that the plaintiff had not been compensated for overtime hours worked on January 5, January 21 and March 24,

2001, he was compensated in his August 3, 2001 paycheck. (Rogers Dec. ¶¶ 1, 14) Defendants submit supporting documentation reflecting that the plaintiff received $384.90 in overtime compensation, paid on August 3, 2001. (Winefsky Dec. Ex. I)

Plaintiff additionally contends that he was wrongfully denied payment for January 18 and 19, 2001, when he attended 11 hours of mandatory job training. Rogers states that on January 17, 2005, a Request for Authorization of Compensation Time was submitted to provide monetary compensation for the 11 hours of work in January 2001. (Rogers Dec. ¶ 17) According to Rogers, the plaintiff had not previously submitted proper documentation in support of the request for "comp time" in January 2001. (Rogers Dec. ¶ 16) Rogers states that when proper documentation was submitted in January 2005, he arranged a payment of $171.05 to compensate the plaintiff for 11 hours spent at training sessions. (Rogers Dec. ¶ 19)

Courts in this Circuit have held that a delay in transmitting a paycheck is not a materially adverse action under Title VII. See Badrinauth v. Touro College, 1999 WL 1288956, at *6-7 (E.D.N.Y. Nov. 4, 1999) (when no evidence indicated purposeful delay in the transmittal of a paycheck, plaintiff suffered a mere inconvenience and not an adverse employment action); Sprott v. Franco, 1997 WL 79813, at *13 n.5 (S.D.N.Y. Feb. 25, 1997) (delay in receipt of paycheck cannot constitute an adverse employment action when the paycheck ultimately was delivered to plaintiff). The plaintiff has failed to set forth any evidence that indicates the delayed payment of August 2001 was anything more than a mere inconvenience.

However, the payment of January 2005 arrived approximately four years after the date where the plaintiff accrued the 11 hours for which he seeks monetary

10

compensation.  A four-year span may constitute more than inconvenience.  To that end, the defendants have submitted evidence showing that the plaintiff mistakenly submitted time codes asserting that he was entitled to overtime pay, when, in fact, he was entitled to "comp time" instead.  (Winefsky Dec. Exs. J, P)  A memorandum dated March 8, 2001 explained to Mr. Miller that employees receive compensation time when they attend mandated in-service training.  (Winefsky Dec. Ex. P)  In opposition, plaintiff offers only an unsupported assertion that he is entitled to overtime pay, not "comp time".  (Opposed Summary Judgment Aff. ¶ 3)  The defendants have submitted unrebutted evidence that the four-year delay in "comp time" payment arose in part from the plaintiff's clerical errors.  When an employee's own errors contribute to delayed payment, the employee cannot reasonably assert that he or she endured an adverse employment action.  Badrinauth, 1999 WL 1288956, at *6.

Assuming arguendo that the delayed payments constituted adverse employment actions, the plaintiff has not directed the Court to facts that support any inference of discrimination or retaliation behind the delays.  By contrast, the defendants have set forth valid, race-neutral explanations for the temporal gap between plaintiff's working hours and his later compensation: specifically, clerical oversights on the defendants' part, and paperwork errors by the plaintiff.  The plaintiff directs the Court to no surrounding circumstances that support an inference that his delayed compensation was retaliatory, only that it was "discriminatory" and that "the defendants took extreme effort" to penalize him.  (Opposed Summary Judgment Aff. ¶ 4)  Because plaintiff's conclusory allegations of retaliation lack support in the record, these claims are dismissed.

3.    Plaintiff's Forgery Claim Is Dismissed

Plaintiff's final allegation is that Mark Gustin, a senior associate director of Kings County Hospital, committed an act of forgery when he altered the plaintiff's time sheets of January 18 and 19, 2001 to reflect that the plaintiff was owed compensation for "comp time" rather than overtime.  (Miller Dec. at 5-6)  According to the plaintiff, these changes constituted forgery because he did not agree to Mr. Gustin's alterations, and because he had not been compensated for his work on January 18 and 19. Mr. Miller asserts in opposition that the payment he received in January 2005 constituted an admission of guilt as to the defendants' alleged wrongdoing.

Although the plaintiff frames this cause of action as one sounding in forgery, I liberally interpret his arguments as asserting a claim for fraud, since there is no independent cause of action for forgery in New York law.  See Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002) (affirming dismissal of civil forgery claim because forgery is a crime and not a private cause of action under New York law).  "In order to make out a prima facie case of fraud, the plaintiff must show that there has been misrepresentation of material facts, falsity, scienter, reliance and injury."  Standish-Parkin v. Lorillard Tobacco Co., 12 A.D.3d 301, 302-03, 786 N.Y.S.2d 13, 15 (1st Dep't 2004).

Pursuant to New York Unconsolidated Law § 7401(2), all actions against defendant New York City Health and Hospital Corporation "for damages for injuries to real or personal property, or for the destruction thereof, or for personal injuries" must be commenced within one year and 90 days of injury.  The Miller Affirmation specifies January 18 and 19, 2001 as the dates upon which the acts of fraud occurred.  The Second Amended Complaint, which is dated April 17, 2001, frames the changes to his time

sheets as a violation of Title VII, not an act of forgery or fraud. The Miller Affirmation

of August 2004 was the first time that the plaintiff asserted a fraud claim – well after the

statute of limitations of one year and 90 days.

Because the plaintiff's fraud claim is time-barred, the defendants' motion

is granted, and the plaintiff's fraud claim is dismissed.

CONCLUSION

The defendants' summary judgment motion is GRANTED. The Clerk is

directed to enter judgment in favor of the defendants, and to dismiss this case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
August 22, 2005